Good morning Council, you can proceed. My name is Guinness Ohazrike. I am representing the Plaintiff Appellant, Mr. Vincent Anthony De Luna. This case is about disability, employment, and my plaintiff is claiming that the employer did not offer him a reasonable accommodation so that he would be able to perform the essential functions of his job. And basically what we are here to argue is that the district court did not provide us the opportunity to argue all the facts and present it to the trial of facts because the summary judgment, we believe, was not the best in this situation because there were material facts still in dispute that has not been addressed and that if we had been given the opportunity, there is a possibility that the trial of facts could rule in favor of the plaintiff by finding that the material facts were in his favor. And I will go straight to the point. The fact that he had a disability, even though it was argued, but the district court considered that at least they would rule in that favor that he had. But then the point came down to the district court saying that he was terminated because he could not perform his job satisfactorily. With respect, counsel, what I see in the record is that your client was terminated because he was perpetually tardy, always, always, always, always, always. And I don't see where the hospital was even aware of an allegation of a disability on his part. So would you please tell me what is the best evidence in the record? Number one, that Sunrise was aware of his alleged disability, and two, that his tardiness was caused by the disability. Where is the evidence to that effect? Yes, Your Honor, the evidence of the disability is on the record. There was an incident on the job when he had a medical situation and he was sent to the doctor. And he was granted medical leave, and he had a doctor treatment for probably about two weeks or more. And then the doctor now sent back the medical records to the employer to release him and put him back on the job. In that record, Your Honor, it was indicated that he has depression and anxiety disorder. Right, but this was, with respect, I think that was back in 2013-14. Yes, I think it was in 2006, I believe. It started from 2006. Perhaps. There was another incident or something in 2013-2014. Exactly, another one. But I guess, as I understand it, the termination here, we're talking 2016 or thereabout. Yes, Your Honor, February 2016. What I'm struggling with is it seems that he didn't say that that had been caused by any disability. As a matter of fact, the one time, I'm just looking, February 4, 2016, he was late again. And he said to his boss that it was caused, his tardiness was caused by the birth of his sixth child. And my mother living with me and my family for the first time, I have definitely spread myself too thin. Now, he was clearly late. Repeatedly, repeatedly was warned about this. He never said, I'm late because I have a disability. Is that incorrect? Your Honor, what happened is that prior to this February 2016, sometime around 2013, they provided him some kind of accommodation where they allowed him to have a flexible time whereby he can come to work like 8.30 and then make up the 10 hours. That continued until there was a change in the attendance policy. Now, with this new change- What year was the change? 2015, the change started. Okay. So, now the whole thing that happened is when the new policy came into place, he now met with them again or approached them and said, this new schedule is not working for me because I want some space between the days. I cannot work Saturday, Sunday, Monday, and Thursday. I need some break between these three days. And he proposed Saturday, Sunday, Tuesday, Thursday, so that he could have some in-between days not to work. Forgive me, but when he did that, did he say, I need this because I have a disability, and this is what my disability is, and here's a doctor's certificate that says I need it. Did he say anything like that? My understanding is that there has been some informal discussion of this disability and accommodation prior to this period. And is that in the record? Is that in the record anywhere? My understanding is that it was known to the supervisor because they have discussed this several times in the past. But then when it came to the idea of having deceased baby and all those things, it was actually after the fact, after the termination, when he now wrote a letter to the overall boss appealing to his human side of life and saying, look, I have six kids to take care of, and I have so-so family situation. My understanding is that the meeting they had in February 2016 where he said, give me this schedule, I can do my work if you can allow me this schedule. One is either you space the days for me, or even if you insist on the Saturday, Sunday, Monday, Thursday, if you allow me to report 8.30 in the morning instead of 7.30, that would be fine. The issue of tardiness, Your Honour, how it connects to the disability is that the drug he takes has effect of sleep disorder. So the problem is he has this tendency of coming to work late because of the effect of the drug. And when the dosage is increased, it becomes worse. But he always makes up the hours each time he comes to work. Let's assume all that's true. Did he communicate to Sunrise, I have a disability, I take this medication, it causes me to oversleep, I need an accommodation? Did he say that, or anything like that? My understanding is that he did, but whether it was a formal, the nature of the communication is what I cannot state. But I believe that in all the discussion with the supervisor, the immediate direct supervisor, and other people involved in this discussion, that he did mention to them that the lateness is caused by the fact of the drug he was taking. You, I'm sure, you're a good lawyer, you can appreciate our situation here. If it's not in the record, it doesn't exist from our perspective. So we look at the record, and I don't find that your client indicated to Sunrise that he had a disability, and I don't find anything that says, because of this disability, I take the medication, and I can't get there on time. I don't find that in the record. Is there a place that I'm missing? The difficulty we have is that, in fact, if there had been any kind of evidential hearing, apart from the allegation he made, apart from the allegation, that's why we felt that if we had been provided the opportunity, because there are material facts in dispute, and the summary judgment did not allow us to look into this, whether the court could conclude. I appreciate that. I really do. I'm just saying that in order to get to that level, you've got to show the basics of the claim. And the first thing you've got to show is that he had a disability, he made it clear to the, in this case, the employer, and that he was tardy in this case, which was the cause of his dismissal, because of the disability. I find no nexus, no connection that he communicated to the employer. And in that case, under the law, unless I'm missing something, he has no claim. What am I missing? Well, you know, another issue there is that the attendance policy required that he has a certain number of tardiness to be able to be terminated or written warning. And the way it was computed is also a problem in this case, because he was supposed to be evaluated every year from January 5th to January 5th of the next year. And if you look at that January 5th to the next January 5th, he had only about six tardiness that could have been written warning. Counsel, I think the policy says that it's calculated on a 12-month rolling basis. Where are you getting the January dates from? The January to January will be 12 months. I understand, but the policy says it's a rolling basis. Yeah, when the last evaluation was done, if you look at 12 months, it will be the next January. But it was not done until February. And then there are two or three tardiness in that February that were also added. You mean February to February? No, January to January. Okay, but then, so you're saying they miscounted the months, but Judge Bimute is saying that it's on a rolling basis, so you keep looking at a new 12-month period. Yes. So what I am saying, in essence, is that the particular evaluation that was done had a 13-month period instead of 12. And that is how the maximum was reached, that 13. That if it was not 13 months, probably he would still be working there today. Are you challenging that he was tardy 24 times in the year before his firing in 2016? No. So he was tardy 24 times, which violated the policy. But that was outside the evaluating period. No, I'm saying if we're taking the 12 months before he was fired, was he tardy 24 times? Do you disagree with that? Yeah, I think I would disagree with that. You do? Okay. On what basis? My calculation is that the evaluation was done on a 13-month period, and if it was done 12 months, that he would not be able to exceed the maximum. As I understand it, this was actually a pattern, a multiple-year pattern. Isn't that correct? Doesn't the record show that? Yes, but the record also shows that before this new attendance policy, it wasn't a problem when they gave him flexible time. They took no action, and they worked with him. But eventually they changed the policy company-wide, and your client did not comply. So the only question is, is there a legal basis from which he can obtain an excuse? And that legal basis would be that he showed them he had a disability that caused tardiness. I don't see anywhere in the record that shows that that happened. What am I missing? My recollection is that at the time this discussion was going on, it was all about whether they can provide him a schedule that he was asking for. I don't think they were disputing at that point that they didn't know about his disability. But the burden is on your client, with respect. He's the one that has to show them that he has a disability. He can't assume that they know he has a disability. Based on the medical records, when the doctor sent in— But that was a long time ago. I mean, people can have issues in their lives where they take medication for a short period of time, and it doesn't even necessarily qualify as a disability. They can go to the doctor, they have something happen, they have an accident, they have a family problem, whatever. But there's a discrete time framework. And here you've got substantial time goes past. There's no evidence that I can see in the record that shows that the company was at all aware that he was claiming he had a disability. Well, in his declaration, paragraph 16, he says, On February 4, 2016, I again informed defendant that disability was direct cause of my tardiness and requested reasonable accommodation to work flexible start time. And then when was he fired? He was fired February 2016. That's after the meeting. I think four days later, they gave him the termination paper. What was the nature of that communication where he said that he requested accommodation based on his disability on February 4? He's asking for the evidence that supports this declaratory statement. I do not have any document to show for it, but my understanding is... Wasn't there an e-mail on that date to Margaret Resitano? And that's the e-mail that I quoted from earlier that he gave his reasoning, none of which mentioned a disability. Thank you. My understanding is that, unfortunately, the communication about this disability was very informal, but they have been talking about it and trying to accommodate him. I cannot appreciate that probably they have been trying to accommodate him, but one thing that looks obvious to me is that they were also in the know that he had some medical issues that was the basis of all these requests for accommodation. Who are you? Are you Mr. Deluna? Yes, that's my name. Okay, why don't you just confer with counsel because his time has run out and maybe... I mean, can you just write him a note and I'll give him a minute after, because only counsel can argue in front of us. So just tell your counsel the point you want to make, okay? I do know about this. No, no, no, that's all right. You're over your time, but I'll give you a minute, and why don't you find out what your counsel wants you to say. That would be fine. All right. Thank you. You don't object, right? Okay, so... Students, this is very unusual. Usually they would write a note, but that's all right. Okay, why don't you make your... He said that each time he asked for some change or modification of his schedule, he always informed them that it was as a result of his disability, his sleep disorder caused by the drug he was taking. So I asked him, was it ever in writing or any particular application form or email, and he said no. All right. Thank you, counsel, and we will hear from the opposing side. Thank you, Your Honor. Good morning, Your Honors. Bruce Young, Louis Brisbane, on behalf of Sunrise Hospital and Medical Center. To start off, I think Judge Smith hit on it directly. The issue that is kind of the main problem that the district court, I believe, understood correctly was that there's no showing of causation. There was no evidence in the record that Mr. DeLuna ever provided any information to Sunrise Hospital to indicate that the reason why he was being tardy was because of some issue with his medication. And I believe the Alamillo case from this circuit is instructive in that regard because the case had sleep apnea, and the whole issue was there's a difference in the facts because his was an undiagnosed. In this particular instance, in our case, the district court said, although thin, they found that there was sufficient evidence that Sunrise would have had knowledge that he had a disability. As Your Honors had pointed out, it was from a 2006. The district court did find knowledge. Correct. That is correct. They found that there was sufficient evidence that there was knowledge of the disability, yes. But what there isn't is any knowledge or information or documentation provided to Sunrise to indicate that the causation for him being tardy was this medication that he was taking. At no time was any information provided to indicate that he could not wake up in time to get to work because of some medication he was taking or some dosage of the medication he was taking because there was something in his declaration in opposition to summary judgment where he said that his medication was being changed, the dosage was being changed. Counsel, the plaintiff alleged that there were two separate counts for disability discrimination. Is that correct? Yes. Yes, but they're essentially the same claim. Are they? They were both disparate impact claims was my understanding. That's what the court found. Exactly. That's what the court found. But wouldn't one of those claims be fairly read as stating a failure to accommodate claim? I don't believe it was actually phrased in that way, but if we wanted to stretch it, the court didn't read it that way. Well, didn't you read it that way? In your brief, you have a response to a failure to accommodate claim. Well, that was on the basis of the court indicating that there was knowledge. So if there was knowledge that there was – That triggers – That would then trigger a responsibility to attempt to accommodate. Right, triggers the obligation on the employer to engage in the interactive process. My recollection is it wasn't really pleaded that way, but that the argument if the court found that there was, then that would therefore engender the responsibility. So, as such, it was – we tried to argue it in that way and to address both particular possibilities. But the fact of the matter is the Alamillo case specifically says that if the employer doesn't have specific information, such as a doctor's note, something of that nature, that indicates that the actual causation of the individual not being able to get to work is from the medication. Why does it have to be a doctor's note? Why can't it just be the employee telling the employer, I need you to alter my work schedule or alter the hours because I'm on medication that prevents me from getting – why does it have to be so formalized? Well, number one, that was what was in the Alamillo case as far as having sufficient evidence that the employer was aware. In this particular instance, we do have, as you pointed out, Judge Wardlaw, that there was one self-serving statement in his declaration in paragraph 16. That's a characterization that it's self-serving. Okay, there's a statement in his declaration where he indicates that he told them. But there's also, if we go back, and one of the reasons that we did include the October of 2013 disciplinary action that he received for TARDIS was that was during this period of time that Mr. DeLuna has said that he had this flexible schedule. And, in fact, he had two different schedules. He had one where he came in at 7.30 and one where he was supposed to come in at 9. And that particular disciplinary action shows that the majority of his TARDIS for that period of time were for missing the 9 o'clock time for him to come into work. So if it was 9 o'clock, if it was 7 o'clock, if it was 7.30, it did not matter. He was TARDI no matter what his start time was. So under the circumstances, there's no evidence that was provided to my client or to the court on summary judgment that the reason he was TARDI was because of this medication. He was TARDI no matter what. But didn't they fire him after he already requested a reasonable accommodation? But it wasn't necessarily reasonable accommodation. And that's the point I was trying to make, Your Honor, in that it didn't matter what time he started. And also, based on the Alamillo case, if you ask after the disciplinary action is being put into place, then it's a retrospective instead of prospective request that is not recognized under the ADA. In this particular instance, he always was TARDI regardless of when his start time was. When he requested to start at 7.30, they gave him the opportunity to start at 7.30. He was late when he started at 7.30. Can you clarify this 12-month period? That's very simple, Your Honor. The policy itself, as Justice Bumatay noted, Judge Bumatay noted, was that it's a rolling 12-month period of time for purposes of the disciplinary action. Mr. Hazariki was talking about the 12-month period of time for his annual performance evaluations, and he's conflating the two. The first write-up within the 12-month period of the rolling 12 months was in March of 2015. The last was in February of 2016, so it clearly falls within the 12 months for those 24 TARDIs that were being considered for purposes of termination. And those 24 were only the 24 that he was written up for. The record, as the district court noted, was that there were many more TARDIs that Mr. DeLuna had that weren't actually put into disciplinary writing. For purposes of the ones that were, there's at least 24. So that's starting in March of 2015, then November of 2015, and then February of 2016. Because he basically had big patches of time where he'd have a bunch in a row, and that's when they would notice and give him the disciplinary action and remind him again. Another thing that's very interesting is in none of those disciplinary actions, each time he signed the disciplinary action report, there's a space for employee comments. At no time in the employee comments did he ever put any explanation or indicate that I'm missing or I'm being TARDI because of a disability or because of my medication. Counsel, what are we supposed to do with the allegation you just raised today that he talks about his disability informally, orally, and so there's no record? What do we do with that? The court can only go based on the record that's before it on summary judgment. That's what's troubling me, too, because I'm just wondering if the rule from today is going, the rule is everything has to be in writing. You have to have a doctor's note. You have to email specifically the causation. You're going to turn all the employees into litigators because anybody who has anything going on, they're going to be documenting in writing. I mean, I doubt this is going to end up a published opinion, but if it were and we were to adopt your position that everything has to be in writing and we have to have doctor's notes, then you're going to turn the workplace into a litigation proceeding. Well, I don't think so, Your Honor. I mean, in this particular instance, this is over a long period of time. He's giving numerous, numerous opportunities. Which is also why I tend to believe that the employer knew he was on medication and knew stuff was going on. I'm not saying necessarily because I have to go back and think about it and discuss it with my colleagues, but the missing thing, the missing link, and that's what we have to decide today is the motivation factor, the causation factor, if you will. That's what we're looking at. But if I understand what you're saying, is that Mr. DeLuna knew perfectly well how to communicate in writing when he wanted to. As I recited on the date that he was terminated, or at least the incident that caused this was the February, let's see, 16th, I think that's right, February, yeah, that's right. February 4th, Your Honor. Right, February 4th. 2016. On that day, that day, he sent an email that attributed his tardiness to the birth of his sixth child and his mother living with them and the family for the first time. He said, I've read myself a few things. He said nothing about any disability or any medication or anything else. As you point out, in each of the, I don't know what you call them, disciplinary forms, whatever, in each instance he signed it, he had an opportunity to comment, there was a place for him to comment about any reasons he put nothing there. So, as you know, under Triton Energy, if there's a basically scintilla of evidence that he comes up with saying that, you know, he had a disability and everybody knew it, that does not offset the reality of what he put in writing, what he didn't sign, what he didn't sign in the other document, does it? And you're perfectly right, Your Honor. There is a responsibility. But what I understand the opposing counsel to be arguing is that those were reasons on top of his medication, depression and anxiety that the employer already knew about. And that's what he's saying. Right. Yes, Your Honor. That's the argument. That is the argument. What's in the record is extremely thin in that regard. And that is why I believe the district court said, yes, there's enough evidence that there was a disability. But the problem with this is, again, he has a responsibility as part of the accommodation process to let the employer know what it is he needs and why. And this is a hospital. They deal with nurses who have bad backs and disabilities. My wife's a nurse. I know how these things work. And the process, many people are out on FMLA or other disability-related at the hospital at any given time. And the ability to go to them and say, look, this is what's happening, it's very simple. But all we have here is he said, oh, well, I told them this. At some point, at some time, we talked about this. But we don't have any real specific information to indicate when that occurred and how that occurred. And what we do have is a lot of written documentation where he had the opportunity to inform or to request where he does not do so. And specifically, as Judge Smith has pointed out, on February 4th, he sent an e-mail to Margaret Rossitano indicating numerous reasons for his request to start at 830, but none of them included he was taking medication. And, again, the Alamillo case, when it talks about the causation aspect, there's no evidence, no record before the court on summary judgment that the reason he was missing work was because of medication other than that one paragraph in the declaration that Your Honor pointed out. And it's our position that was insufficient to set forth enough information that the cause for his tardiness was the medication he was taking for his disability. As the Alamillo case noted, it said, look, he could have set another alarm. There's numerous other things that the individual could do to make sure that they wake up on time if they have medication that causes them to be groggy or sleepy. They can take the medication earlier. There's numerous things that can be done. There was no information provided by a doctor indicating that he needed to report to work at a particular time because he was taking medication. That if he took medication at a particular time, then this start time would be okay. That would be the kind of thing you would expect to report to an employer if you had difficulty reporting to work at a specific time, saying, well, my doctor says if I take my medication at this time, I should be able to be awake sufficiently to report to work at X time. There's none of that. There's also nothing from his doctor indicating that he can't work three days in a row, that if he only works two days in a row, then he'll be able to get up in time to make it to work. But if he works three days in a row, he can't get up in time to make it to work. Nothing like that was ever presented. There's nothing in the record that says he ever told anybody at Sunrise that that's what was necessary. So the fact is, in our opinion, there's a failure on his part to provide sufficient information to justify any type of further accommodation if accommodation was provided, because obviously my client says no, that it wasn't ever discussed. But the fact of the matter is, even if it had been, all of the record reflects that it doesn't matter what time he starts. He's still going to be tardy, and there was nothing provided to the employer to allow them to understand that if a particular start time were to be imposed or implemented, then he would, in fact, be able to make it based on his disability and the medication he was taking. All right, counsel. Thank you very much for your time. The case of DeLuna v. Sunrise Hospital and Medical Center is submitted.
judges: Wardlaw, M. Smith, Bumatay